UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 15-127-DLB-JGW

KOFI A. ALEXANDER                                                               PLAINTIFF

v.                         **MEMORANDUM OPINION AND ORDER**

EAGLE MANUFACTURING CO., LLC                               DEFENDANT

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

This matter is before the Court upon Defendant Eagle Manufacturing Company, LLC's Motion to Dismiss (Doc. # 12) Plaintiff Kofi A. Alexander's Amended Complaint. (Doc. # 11). In his Complaint, Alexander alleges a state-law claim for wrongful termination against his former employer, Eagle Manufacturing. Eagle Manufacturing argues that Alexander's Amended Complaint should be dismissed because the allegations contained in the Amended Complaint are insufficient to state a claim for wrongful termination under Kentucky law. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

Given the present procedural context, the factual summary that follows is taken from Alexander's Amended Complaint (Doc. # 11) and construed in his favor. *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (internal citations omitted). Alexander worked for Eagle Manufacturing, which performs machine drilling operations for several automobile manufacturers, including Toyota, Chrysler, and the Ford Motor Company. (Doc. # 11 at ¶ 7). The pertinent facts in this wrongful termination case transpired over the course of four

1

days – Friday, August 30, 2013, the date of a workplace disagreement between Alexander and his co-workers, to Tuesday, September 3, 2013,[1] the date Alexander's employment was terminated. *Id.* at ¶ 38; ¶ 67.

As an employee of Eagle Manufacturing, Alexander was tasked with the responsibility of making sure that no defective engine blocks were shipped to automobile manufacturers. *Id.* at ¶ 30. Before the engine blocks made their way to Alexander, the engines had been machine-drilled according to the automobile manufacturers' specifications and checked for defects. *Id.* at ¶¶ 13-23. If any of the engine blocks are defective, then temporary employees hired by Ford Motor Company painted "E-2" on the block, which symbolizes the block is defective and should not to be shipped to Ford. *Id.* at ¶¶ 24-25. Next, the engine blocks are "dipped into tanks for impregnation sealing against cracks or porosity" and "then cooled." *Id.* at ¶¶ 27-28. Finally, the engine blocks arrive at the last processing station - where Alexander worked. *Id.* at ¶ 29. Alexander performed a final compliance check to "make sure that no defective E-2 engine blocks were shipped." *Id.* at ¶ 30. After Alexander completed his responsibilities and signed off on paperwork, the engine blocks were inspected by a quality assurance employee and then shipped to the appropriate automobile manufacturer. *Id.* at ¶¶ 33-35; ¶ 48.

On Friday, August 30, 2013, Alexander was working second shift, when he discovered first-shift employees "wiping off E-2 codes from defective blocks with paint remover." *Id.* at ¶ 43. Alexander promptly confronted the first-shift employees and asked one of them "who was going to put their name on the documents, signing off on the

---

1 Plaintiff's Complaint alleges that he was fired on "Tuesday morning, September 2, 2013." (Doc. # 11 at ¶ 67). However, a review of the 2013 calendar shows that Labor Day was Monday, September 2, 2013, and Tuesday was September 3, 2013.

shipment of these defective engine blocks, and misrepresenting the defective engine block as good engine blocks." *Id.* at ¶¶ 44-47. During this encounter, the first-shift supervisor "intervened and barked, 'I'll put my f—in' name on them,' and ordered Alexander to get back to work." *Id.* at ¶ 52.  Shortly thereafter, Alexander's second-shift "supervisor was summoned" and there was an allegation that Alexander had cussed at the first-shift supervisor. *Id.* at ¶¶ 54-55.  Although Alexander denied cussing at the first-shift supervisor and explained what he had witnessed, his "supervisor told him to take the rest of the day off." *Id.* at ¶¶ 57-62.

Before leaving, Alexander spoke to the first-shift shipping coordinator and advised him that he was "going to report the incident and the erasure of E-2 codes from defective blocks to the HR department" when he came back to work. *Id.* at ¶ 64.  On Tuesday morning, September 3, 2013, "Alexander received a phone call from his supervisor telling him not to report to work, and that he had been fired." *Id.* at ¶ 67.  In response, Alexander called Eagle Manufacturing's Human Resources Department and "told them he was being fired for discovering and reporting the first shift's erasure of E-2 codes from defective engine blocks, and to prevent him from reporting fraudulent activity." *Id.* at ¶ 68.  Although the Human Resources Department told Alexander they would investigate his allegations and call him back, they never did.  Alexander "continued to call Eagle [Manufacturing] representatives to protest" his termination, including Eagle Manufacturing's parent company, Linamar Industries, but he never received a response.

Alexander filed this lawsuit, contesting his termination, on July 7, 2015. (Doc. # 1). After Eagle Manufacturing filed a Motion to Dismiss, Alexander amended his Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B). (Doc. # 11).  In his Amended

3

Complaint, Alexander claims that Eagle Manufacturing's conduct violated ten Kentucky statutes – KRS 517.020 (deceptive business practices); KRS 517.050 (falsifying business records); KRS 514.040 (theft by deception); and six sections of Kentucky's Uniform Commercial Code.[2] Eagle Manufacturing responded by filing the instant Motion to Dismiss (Doc. # 12), which is fully briefed (Docs. # 15 and 17), and ripe for review.

Because the facts in Alexander's Amended Complaint (Doc. # 11) do not make it plausible that Eagle Manufacturing wrongfully terminated Alexander in violation of Kentucky law, Defendant's Motion to Dismiss (Doc. # 12) will be granted.

## II.  ANALYSIS

### A.  Applicable Law

Federal courts sitting in diversity apply federal procedural law. *Hanna v.Plumer*, 380 U.S. 460, 465 (1965). The substantive law of the forum state governs the claims asserted. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Moore v. Coffey*, 992 F.2d 1439 (6th Cir. 1993); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Accordingly, the Court will evaluate the instant Motion in accordance with the Federal Rules of Civil Procedure and apply Kentucky law to Plaintiff's wrongful termination claim.

### B.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is met when the facts

---

2   KRS 355.2-301 (general obligations of sellers of goods to transfer and deliver in accordance with contract); KRS 355.1-213 (express warranties); KRS 355.2-314 (implied warranty of merchantability); KRS 355.2-315 (implied warranty of fitness for a particular purpose); KRS 355.2-503(1), (2), and (5) (manner of seller's tender of delivery); KRS 355.2-601 (buyer's rights on improper delivery); KRS 355.2-721 (right to adequate assurance of performance and remedies for fraud).

4

in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions." *Id.* Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

**C. Alexander's Amended Complaint Does Not State Sufficient Factual Matter to State a Plausible Claim for Wrongful Termination**

Generally, the discharge of an at-will employee does not support an action for wrongful termination under Kentucky law. *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195 (Ky. 2001). In fact, an employer may ordinarily "discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). While there is a narrow public policy exception to this "terminable-at-will" doctrine, Kentucky courts have recognized that "'[e]mployers as a group have a legitimate interest to protect' which requires that 'the cause of action for wrongful discharge [be] clearly defined and suitably controlled.'" *Firestone*, 666 S.W.2d at 733. Accordingly, Kentucky law has established limitations on the wrongful termination cause of action available to employees. First, "[t]he discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). That policy must also be "evidenced by a constitutional or statutory provision." *Id.* And finally, "[t]he determination of whether the public policy asserted is a well-defined and fundamental one is an issue of law" to be decided by the Court. *Firestone*, 666 S.W.2d at 733.

5

To establish a prima facie case in a "non-civil rights wrongful discharge case," the plaintiff "must show at a minimum that he was engaged in a statutorily protected activity, that he was discharged, and that there was a connection between the 'protected activity' and the discharge.'" *Follett v. Gateway Regional Health Sys., Inc.*, 229 S.W.3d 925, 929 (Ky. Ct. App. 2007) (citing *Willoughby v. GenCorp, Inc.*, 809 S.W.2d 858, 861 (Ky. Ct. App. 1990)). "More specifically, the third prong requires a plaintiff to show the protected activity was 'a substantial and motivating factor but for which the employee would not have been discharged.'" *Id.* (citing *First Property Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993). "[T]here is rarely a case where a plaintiff has a 'smoking gun' to prove improper motive, a plaintiff must frequently 'rely on circumstantial evidence and the inferences that can be drawn therefrom to make his or her case.'" *Id.* (citing *Willougby*, 809 S.W.2d at 861).

"[O]nly two situations exist where 'grounds for discharging an employee are so contrary to public policy as to be actionable' absent 'explicit legislative statements prohibiting the discharge.'" *Grzyb*, 700 S.W.2d at 402 (internal citations omitted). "First, where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id.* "Second, when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.* Although unclear, it appears that Alexander is attempting to cast his termination as wrongful under both exceptions; therefore, the Court will consider each one in turn.[3]

---

3   Alexander also argues that the UCC does not preempt Alexander's wrongful termination claim because the UCC does not provide any remedy for retaliation or wrongful discharge. "In the context of a wrongful discharge case, preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010). However, the Court need not reach the parties' preemption arguments because Alexander has failed to state a claim for wrongful termination,

6

## 1. *Refusal Exception*

When the wrongful termination claim is based on a refusal to violate a law in the course of employment, the plaintiff-employee does not have to allege that the "statute evidencing the public policy [has] the primary purpose of protecting the employee." *Sparks v. Henson*, No. 2011-CA-000423-MR, 2012 WL 5463877 (Ky. Ct. App. Nov. 9, 2012) (citing *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421-22 (Ky. 2010). However, an employee's mere objection to the violation of law, without a refusal to act, does not constitute a wrongful termination claim. *See Northeast Health Mgmt., Inc v. Cotton*, 56 S.W.3d 440 (Ky. Ct. App. 2001) (court held that two employees who refused to commit perjury after being asked to do so by their supervisor had wrongful termination claim); *see also Sparks v. Henson*, Nos. 2011-CA-000423-MR, 2011-CA-000518-MR, 2012 WL 5463877 (Ky. Ct. App. Nov. 9, 2012) (employee had wrongful termination claim after she was terminated for refusing to make fraudulent misrepresentations to a company on behalf of her employer); *Burton v. Zwicker & Assoc., PSC*, 978 F. Supp.2d 759, 768-769 (E.D. Ky. 2013) (district court held that employee's termination was actionable where the employer terminated him after management attempted to influence his statements and employee's "refusal to commit perjury in the future"); *Charles v. Print Fulfillment Servs., LLC*, No. 3:11-CV-00553-TBR, 2016 WL 865325 (W.D. Ky. Mar. 2, 2016) (finding that Kentucky law does not support plaintiff's position that a mere objection without a refusal to act gives rise to a wrongful termination claim).

The requirement for a request to violate law, and refusal to do so by the employee,

---

which could be preempted.

is discussed at length in *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412 (Ky. 2010), where plaintiffs claimed they were terminated after one of them refused to offer false testimony during a legal proceeding. Specifically, plaintiffs alleged "retaliation for testifying in support of a civil rights complaint by a co-worker" and the Kentucky Supreme Court determined that plaintiffs had "asserted an appropriate claim for wrongful discharge based on the laws against perjury." *Hill*, 327 S.W.3d at 422. Discussing the difference between other employment-based claims and wrongful termination, the Kentucky Supreme Court explained:

> [H]ad KLC never approached Kim Hill about her testimony in the Gilmore matter and the only conduct at issue was her eventual testimony on his behalf, a [Kentucky civil rights] claim could be stated upon termination but there would be no basis for a common law wrongful discharge claim, i.e. no request for perjured testimony.

*Id.* at 423. Therefore, the essential element under the refusal-to-violate theory of wrongful termination is the employer's request that the employee violate law.

Alexander claims that his Amended Complaint "adequately alleges that he was fired for refusing to violate Kentucky laws by signing paperwork that he knew would be false and fraudulent." (Doc. # 15 at 11). In support of this argument, Alexander relies upon his discovery of first-shift employees erasing the E-2 symbol from defective engine blocks and the ensuing confrontation between him and those first-shift employees. Although Alexander asserts that he "was not looking for volunteers to commit fraud when he rhetorically asked who was going to sign the documents" and instead "was making clear to all concerned that he was not going to sign his name on the documents" or "falsely and fraudulently misrepresent as good engine blocks these blocks that he knew were defective," one critical component is missing – a request that Alexander violate any law.

8

Alexander was not asked to violate law, take any action, or sign any documents. Under Kentucky law, an employee's mere objection to the violation of law, without a refusal to act, does not constitute a wrongful termination claim. Although Alexander attempts to liken his termination to those in *Cotton, Burton*, *Hill*, and *Sparks*, each of those cases involved a clear request for the employee to violate a law and failure or refusal of the employee to do so, which resulted in their termination. Because Alexander was never asked to violate any law, and at most, simply objected to other employees violating the law, the allegations contained in his Amended Complaint fail to state a claim to relief that is plausible on its face.

### 2. *Protected Activity Exception*

For a plaintiff to assert a claim under the protected activity exception, the protected activity must relate to the exercise of a "right embodied in a well-established legislative enactment." *Charles*, 2016 WL 865325, at *2. While "the legislature need not expressly create a private remedy before the courts can recognize public policy as established by legislative determination," "the concept of an employment-related nexus is critical to the creation of a 'clearly defined' and 'suitably controlled' cause of action for wrongful discharge." *Grzyb*, 700 S.W.2d at 402 (citing *Firestone*, 666 S.W.2d at 733). Accordingly, plaintiff-employees have a viable causes of action for wrongful termination when they allege they were discharged for engaging in statutorily-protected activities.

For example, Kentucky courts have held employees were engaged in statutorily-protected activities when they sought workers' compensation benefits, reported unlawful activity when such reporting is required or permitted by state law, and reported violations of law or public policy to public entities. *See Firestone*, 666 S.W.2d 730 (plaintiff had

wrongful termination claim after being terminated for pursuing a workers' compensation claim); *see also Foster v. Jennie Stuart Medical Ctr., Inc.*, 435 S.W3d 629 (Ky. Ct. App. 2013) (court held that plaintiff had claim for wrongful termination where she was terminated after reporting allegedly unlawful activity to the Kentucky Board of Nursing as required and protected by KRS Chapter 216B); *Follett*, 229 S.W.3d 925 (court held there was sufficient evidence of wrongful termination where plaintiff made reports about billing issues to the state Medicaid Fraud Control Unit where KRS 205.8465(3) prohibits discrimination or retaliation against any person who makes a report required or permitted by KRS 205.8451-8483); *Mitchell v. Coldstream Labs., Inc.*, 337 S.W.3d 642 (Ky. Ct. App. 2010) (holding same).

Furthermore, Kentucky law clearly establishes that an employee's report of "illegal activity to those other than public authorities is not protected activity under the public policy exception." *See Zumot v. Data Mgmt. Co.*, Mo. 2002-CA-002454-MR, 2004 WL 405888, at *2 (Ky. Ct. App. Mar. 5, 2004) (holding plaintiff failed to state a claim for wrongful termination where he alleged he was terminated after he reported to management that other employees were using marijuana and drinking alcohol during working hours); *see also Airdrie Stud, Inc. v. Reed*, Nos. 2001-CA-001397-MR, 2001-CA-001396-MR, 2002-CA-000357-MR, 2003 WL 22796469 (Ky. Ct. App. Nov. 26, 2003), at *3-4 (holding internal report of drug and alcohol use to management "insufficient to sustain an action for wrongful discharge"); *accord Chavez v. Dakkota Integrated Sys., LLC*, 832 F. Supp. 2d 786, 803 (W.D. Ky. 2011) (holding that to claim protection, an employee "must present evidence that he brought his complaint to the attention of public authorities, and not just [to] management").

Alexander seems to allege that he reported violations of law or public policy, and therefore, has a cognizable wrongful termination claim under the protected activity exception. (Doc. # 15 at 3). Alexander attempts to distinguish *Zumot*, *Chavez*, and *Airdrie Stud* by claiming that they involved motions for summary judgment, and not a motion to dismiss. Despite the procedural context, Alexander has failed to present sufficient factual matter to state a plausible claim for wrongful termination. Even assuming that the statutes Alexander relies on evidence fundamental and well-defined public policies on which a wrongful termination claim could be based, Alexander's claim fails because he never reported any of the alleged violations of law to any public entity. Alexander only alleged that he reported the erasure of E-2 codes "to the Human resource department," and "reported the incident and objected to his discharge all the way up the management chain to corporate headquarters in Canada." *Id.* at 3. However, Alexander's report of allegedly illegal activity to Eagle Manufacturing's management, as opposed to public authorities, "is not protected activity under the public policy exception." *Zumot*, 2004 WL 405888, at *1. Accordingly, the allegations contained in his Amended Complaint fail to state a claim for wrongful termination under the refusal theory or the protected activity theory.

**D.      Alexander will not be granted leave to amend his Complaint further.**

"Although Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave [to amend a complaint] when justice so requires,' the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008). District courts have discretion in determining whether to permit an amendment. *Id.* (citing *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). One of the factors that affects this determination is the futility of the amendment. *Seals v. Gen.*

*Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d . 452, 459 (6th Cir. 2001)).

Alexander requests that the Court "grant [him] leave to further amend," pursuant to Federal Rule of Civil Procedure 15(a), in lieu of dismissing the Amended Complaint if the Court finds that he has failed to state a claim upon which relief can be granted. (Doc. # 15 at 17). However, Alexander does not provide any details concerning this proposed amendment. Eagle Manufacturing contends that Alexander should not be permitted to file another Amended Complaint because such an amendment would be futile. (Doc. # 17 at 5).

Because the Court has found that the facts surrounding Alexander's alleged termination do not fit within either of the two narrow exceptions to Kentucky's terminable-at-will doctrine, any amendment would be futile. Accordingly, the Court will deny Alexander's alternative request to amend the Complaint.

### III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Defendant Eagle Manufacturing Company, LLC's Motion to Dismiss Amended Complaint (Doc. # 12) is hereby **granted**, and Plaintiff Kofi A. Alexander's Amended Complaint (Doc. # 11) is hereby **dismissed**;

(2) Defendant Eagle Manufacturing Company, LLC's Motion to Dismiss Complaint (Doc. # 7) is hereby **denied as moot**; and

(3) This matter is **stricken** from the Court's active docket.

This 27th day of September, 2016.



Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\ORDERS\Cov15\15-127 MOO.wpd